**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 14-cv-2503-WJM-KMT

CHRISTOPHER TANTLINGER,

      Plaintiff,

v.

LOUIS DUCHAINE, individually,
BURLEIGH CASTELLO, individually, and
STEVE HARTLEY, individually and in his official capacity,

      Defendants.

---

**ORDER DENYING MOTION TO DISMISS**

---

Plaintiff Christopher Tantlinger is an inmate at the Arkansas Valley Correctional Facility in Ordway, Colorado ("Facility"), an institution operated by the Colorado Department of Corrections ("CDOC"). Tantlinger has sued certain Facility employees under 42 U.S.C. § 1983, alleging that his Eighth Amendment rights were violated when he developed a serious infection which Facility employees ignored until the infection had caused permanent damage. (*See generally* ECF No. 14.)

Steve Hartley, warden of the Facility, is among those whom Tantlinger has sued. Tantlinger alleges that Hartley had a duty to train and supervise Facility staff regarding proper attention to inmates' medical needs, and that Hartley failed in this duty. (*Id*. ¶¶ 50–55.) Hartley now moves to dismiss himself from this lawsuit under Federal Rule of Civil Procedure 12(b)(6), claiming that Tantlinger has failed to state a proper supervisory liability claim against him. (ECF No. 36.) For the reasons explained below,

however, the Court finds that Tantlinger's complaint is minimally sufficient to state a plausible supervisory liability claim against Hartley.  Hartley's motion is therefore denied.

## I.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted."  The 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice."  *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted).  "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'"  *Id.* (quoting *Twombly*, 550 U.S. at 556).

## II.  FACTS

The Court assumes the truth of the following facts for purposes of resolving Hartley's motion.

Tantlinger is an inmate at the Facility.  (ECF No. 14 ¶¶ 4, 10.)  On September 19, 2012, Tantlinger's wisdom teeth were extracted.  (*Id.* ¶ 13.)  On September 20, 2012, Tantlinger complained to Facility staff of severe pain in his mouth.  (*Id.* ¶ 14.)  On that same day or the next, Tantlinger and a cellmate named Justin Hammond (who "had previously had a dental procedure done while [an inmate] and it resulted in an untreated infection which left him gravely ill") visited a prison sergeant, seeking help for Tantlinger's pain, but the sergeant refused to help.  (*Id.* ¶¶ 15–17.)

On September 22, 2012, Tantlinger visited the Facility's medical unit, which determined that he had a fever of 100.1 degrees, an elevated pulse, high blood pressure, and moderate swelling in his lower jaw.  (*Id.* ¶ 18.)  He was given ibuprofen and referred for a dental appointment.  (*Id.* ¶ 19.)

The next day, Tantlinger met with a nurse.  (*Id.* ¶ 21.)  At this point, his swelling had spread to his lower jaw and neck, he was unable to swallow properly and consequently unable to drink or eat, he had difficulty breathing, he continued to have a fever, and he was spitting up blood-tinged phlegm.  (*Id.*)  He was taken to a hospital in Pueblo, Colorado, and given sore throat medication.  (*Id.* ¶ 22.)

On September 24, 2012, Tantlinger continued to suffer, but the prison guard to whom he complained refused to help.  (*Id.* ¶¶ 24–25.)  On September 25, 2012, Tantlinger was unable to get out of bed.  (*Id.* ¶ 26.)  Tantlinger's cellmate, Hammond, asked numerous guards to assist Tantlinger, but all of them ignored those requests.  (*Id.* ¶¶ 27–28.)

On September 26, 2012, Tantlinger was returned to the Pueblo hospital and given antibiotics.  (*Id.* ¶ 29.)  "[A]t the hospital, Tantlinger was diagnosed with [a] life threatening case of Ludwig's angina . . . a serious . . . connective tissue infection of the floor of the mouth, usually occurring in adults with concomitant dental infections and if left untreated, may obstruct the airways, necessitating a tracheotomy."  (*Id.* ¶ 30.)

Tantlinger indeed required a tracheotomy, as well as a feeding tube.  (*Id.* ¶ 31.)  On September 28, 2012, he was airlifted to a Denver hospital and remained under medical care in Denver through December 11, 2012.  (*Id.* ¶¶ 33–35.)  As a result of the length of time his infection went untreated, Tantlinger now "has a near paralysis of his tongue and his speech is severely impaired."  (*Id.* ¶ 37.)

With respect to Hartley, Tantlinger alleges that he is "responsible for the adequate training and supervision of all staff at the [F]acility," including "making all staff aware of the fact that if anyone observes an inmate with serious medical needs, they are obligated to immediately respond with appropriate actions designed to address those medical needs."  (*Id.* ¶ 9.)  Tantlinger does not allege that Hartley was specifically aware of his medical condition.

## III.  ANALYSIS

### A.    Failure to Supervise or Train

The Eighth Amendment protects against the infliction of "cruel and unusual punishment."  U.S. Const. amend. VIII.  The Eighth Amendment's prohibition against cruel and unusual punishment encompasses deliberate indifference by prison officials.  *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).  "Deliberate indifference to serious medical

4

needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,'

proscribed by the Eighth Amendment. This is true whether the indifference is

manifested by prison doctors in their response to the prisoner's needs or by prison

guards in intentionally denying or delaying access to medical care." *Id.* at 104–05.

Tantlinger has adequately alleged a claim against the specific Facility employees

who knew of his predicament and ignored it. However, Tantlinger's claim against

Hartley is different. Tantlinger does not allege that Hartley personally ignored his pleas

for help, or was even aware of them. Rather, he argues that Hartley violated his duty to

train and supervise Facility staff. (ECF No. 14 ¶¶ 50–55.)

"Failure to supervise and failure to train are treated the same in the Tenth

Circuit." *A.B. ex rel. B.S. v. Adams-Arapahoe 28J Sch. Dist.*, 831 F. Supp. 2d 1226,

1245 (D. Colo. 2011). Failure to train is most commonly asserted as a species of

*Monell* (municipal) liability, but can also lead to individual liability for supervisors in

some circumstances. *See Greason v. Kemp*, 891 F.2d 829, 837 (11th Cir. 1990); *see

also Dodds v. Richardson*, 614 F.3d 1185, 1211 (10th Cir. 2010) (Tymkovich, J.,

concurring) ("supervisors may have a responsibility, as do municipalities, to ensure that

their subordinates are properly trained—failure to carry out this duty may in some cases

result in a violation").

In the Tenth Circuit, courts apply a three-prong test to determine a supervisor's

liability for failure to train or supervise. *See Sutton v. Utah State Sch. for Deaf & Blind*,

173 F.3d 1226, 1240 (10th Cir. 1999). As adapted to Tantlinger's allegations, that

three-prong test is as follows: (1) whether, in failing adequately to train or supervise

subordinates, Hartley was deliberately indifferent to Tantlinger's health care needs; (2) whether a reasonable person in Hartley's position would know that his failure to train and supervise reflected deliberate indifference; and (3) whether Hartley's conduct was causally related to the constitutional infringement by his subordinate. *Id.*; *see also Greason*, 891 F.2d at 837. The third element (causation) is often discussed in terms of requiring an "affirmative link" between the supervisor's failure to act and the victim's injury. *See Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1156 (10th Cir. 2001).

Hartley challenges Tantlinger's complaint on the first element (deliberate indifference) and the third element (causation or "affirmative link"), arguing that Tantlinger's allegations in this regard are no more than the "formulaic recitation of the elements" disapproved of in *Twombly* and *Iqbal*. (ECF No. 36 at 6–10.) The allegations in question are as follows:

> Defendant Hartley had a duty to train and supervise correctional officers, medical staff, and mental health staff in order to ensure the safety and well[-]being of prisoners confined at the facility.

> Defendant Hartley failed to discharge these duties.

> Hartley acted in deliberate indifference to Tantlinger's serious medical needs in failing to adequately train and supervise correctional officers, medical staff, and mental health staff.

> Hartley's failure to properly train and supervise their [*sic*] subordinate employees was a moving force and proximate cause of the violation of Mr. Tantlinger's constitutional rights.

(ECF No. 14 ¶¶ 51–54.)

6

Hartley is correct that, at bottom, Tantlinger is doing little more than reciting the elements of a cause of action, rather like writing a jury instruction.  However, "[d]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  In this context of this case, the Court finds that Tantlinger's allegations are nonetheless sufficient, despite being essentially conclusory.

To begin, Tantlinger's complaint alleges that at least five named individuals (ECF No. 14 ¶¶ 15, 19–21, 24) and an unknown number of other guards and staff members (*id.* ¶¶ 14, 18, 23, 28) consistently ignored his obvious distress.  Tantlinger also alleges that Hammond, his cellmate, had previously experienced the same problem.  (*Id.* ¶ 16.) Taking these allegations as true, as the Court must at this stage, this plausibly suggests at least a failure to train or supervise employees regarding prisoners' medical needs.

The next question is whether that failure may plausibly be attributed to Hartley. Although Tantlinger alleges no information that would directly implicate Hartley in the process of training and supervision with respect to inmates' medical needs, there is also a significant "asymmetry of information" between Tantlinger and Facility staff.  *Donahoe v. Arpaio*, 869 F. Supp. 2d 1020, 1068 (D. Ariz. 2012), *aff'd sub nom. Stapley v. Pestalozzi*, 733 F.3d 804 (9th Cir. 2013); *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (discussing *Twombly/Iqbal* pleading standards "where the facts are peculiarly within the possession and control of the defendant"); *Brenes-Laroche v. Toledo Davila*, 682 F. Supp. 2d 179, 187 (D.P.R. 2010) ("We

understand the difficulty faced by many civil rights litigants in Plaintiff's position who are not armed with sufficient facts, more likely to be found in Defendants' possession, to survive *Iqbal*'s pleading standard at this pre-discovery stage of litigation."); *cf. Barnes v. Harris*, 783 F.3d 1185, 1196–97 (10th Cir. 2015) (holding that a complaint failed the *Twombly*/*Iqbal* standard specifically because the relevant information was fully available to plaintiffs before filing suit).  Indeed, Hartley's motion asserts that, "[c]ontrary to [Tantlinger's] general allegation, there are varying departments and individuals with varying duties and responsibilities pertaining to training different individuals for different roles and duties at [the Facility]."  (ECF No. 36 at 8.)

Tantlinger cannot be expected to know at this point the "varying departments and individuals with varying duties and responsibilities."  But whatever they might be, Tantlinger can reasonably assume (given his present access to information) that the "varying departments and individuals" are ultimately supervised by Hartley, the warden of the Facility.  Thus, for pleading purposes, Tantlinger has plausibly alleged an "affirmative link" between his injury and the alleged lack of supervision and training evident in his complaint.[1]

The final question is whether Tantlinger has adequately alleged deliberate indifference on Hartley's part.  Notably, even under Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for claims such as fraud, "conditions of a person's

---

[1] To survive summary judgment, Tantlinger will need to present a much more direct connection between Hartley's alleged failure to supervise and Tantlinger's injury. *See, e.g.*, *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1154 (10th Cir. 2006); *Grimsley v. MacKay*, 93 F.3d 676, 680 (10th Cir. 1996).  For pleading purposes, however, Tantlinger's current complaint is enough.

mind may be alleged generally."  Moreover, if Facility employees behaved as Tantlinger alleged, and if Hartley indeed is responsible for their training and supervision, it is a plausible inference that he held a deliberately indifferent state of mind.  Therefore, Tantlinger has plausibly alleged a cause of action against Hartley for supervisory liability.

## B.    Qualified Immunity

Hartley also argues that he deserves qualified immunity.  (ECF No. 36 at 10–11.) "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted).  To resolve a claim of qualified immunity, the Court must consider two elements: (1) whether Tantlinger has alleged a constitutional violation, and (2) whether the violated right was "clearly established" at the time of the violation.  *Id.* at 230–31.

As to the first element, Hartley argues that "Tantlinger fails to allege that Defendant Hartley violated any constitutional right."  (ECF No. 36 at 11.)  Hartley is plainly wrong.  As discussed above, Tantlinger has specifically alleged that Hartley is liable for a violation of his Eighth Amendment right to adequate medical care in prison. (ECF No. 14 ¶¶ 43–55.)

As to the second element, Hartley does *not* argue that the right to adequate medical care in prison, or a supervisor's duty to train and supervise with regard to established constitutional rights, is not clearly established.  Hartley instead argues that

"it is not clearly established that a warden or other prison official may be held liable in his or her supervisory capacity for the alleged constitutional violations by subordinates without the existence of an affirmative link to the alleged conduct and without the requisite state of mind."  (ECF No. 36 at 11.)  This is a bit disingenuous.  Hartley is saying, in essence, "It is not clearly established that I can be liable when a plaintiff fails to state a claim."  This assumes, of course, that Tantlinger has failed to state a claim, making the entire argument redundant.  In any event, the Court has already determined that Tantlinger has plausibly alleged "the requisite state of mind" (deliberate indifference) and "an affirmative link" (causation).  Hartley's qualified immunity argument therefore fails.

## IV.  CONCLUSION

For the reasons set forth above, Hartley's Motion to Dismiss in Part Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 36) is DENIED.


Dated this 26th day of June, 2015.

BY THE COURT:


_____
William J. Martinez
United States District Judge